UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CAROL ROJAS, ) <br> ) <br>            Plaintiff, ) <br> vs. ) <br> ) <br> LEWIS BRISBOIS BISGAARD & SMITH ) <br> LLP, a California corporation, ) <br> ) <br>            Defendant. ) <br> _____ ) | Case No.: 2:13-cv-01256-GMN-CWH <br><br> **ORDER** |

Pending before the Court is the Motion to Dismiss (ECF No. 8) filed by Defendant Lewis Brisbois Bisgaard & Smith LLP ("LBBS") on November 5, 2013.  Plaintiff Carol Rojas ("Plaintiff") filed her Response (ECF No. 11) and Declaration in Support of Response (ECF No. 12) on November 18, 2013.  LBBS filed its Reply (ECF No. 14) on November 28, 2013.  For the reasons addressed below, the Court **Grants** LBBS's Motion to Dismiss.

I.  **BACKGROUND**

Plaintiff began working for LBBS as a Legal Assistant on July 18, 2007. (Compl. ¶ 11, ECF No. 1.)  On her first day of work, Plaintiff signed a "Mutual Agreement to Arbitrate Claims" (the "Agreement to Arbitrate"). (Exs. 3 and 7 to Plaintiff's Decl. in Supp., ECF No. 12); *see also* (Ex. A to Mot. to Dismiss, ECF No. 8.)  Throughout her employment with LBBS, Plaintiff received positive reviews and regular pay increases and never received any kind of reprimand or disciplinary action. (Compl. ¶¶ 12-13, ECF No. 1.)

In February of 2009, Plaintiff was hospitalized twice for a medical condition that affected her vision and muscle coordination. (*Id.* ¶ 14.)  In May of 2009, LBBS's staff was informed that the firm's office at 400 S. Fourth Street (the "Downtown Location") would be moving to a new office at 6385 S. Rainbow Boulevard (the "Rainbow Location"). (*Id.* ¶ 17.)

When Plaintiff informed her supervisor that her ongoing medical conditions prevented her from driving to the Rainbow Location, she was reassigned to attorneys who were staying at the Downtown Location. (*Id.* ¶ 18.)  However, in May of 2010 Plaintiff was informed that the remaining attorneys, with the exception of the workers' compensation group, would be moving to the Rainbow Location. (*Id.* ¶ 19.)  Plaintiff then interviewed for a paralegal position with an attorney in the workers' compensation group, but she was told that she was not qualified for the position because she had not obtained certification as a paralegal. (*Id.* ¶¶ 21-23.)

On July 9, 2010, Plaintiff resigned, citing medical reasons. (*Id.* ¶ 25.)  Sometime later, Plaintiff learned that LBBS filled the open paralegal position with a woman who is younger than Plaintiff and who also did not have a paralegal certificate. (*Id.* ¶ 27.)  Plaintiff then filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC") alleging that she was discriminated against based on her age and medical disability. (*Id.* ¶ 4.)  On April 25, 2013, Plaintiff received her Right to Sue from the EEOC and subsequently filed her Complaint. (*Id.* ¶ 6.) The Complaint alleges five claims for relief against LBBS for discrimination based on age in violation of the Age Discrimination in Employment Act (the "ADEA") and the corresponding Nevada statute, for discrimination based on disability in violation of the Americans with Disabilities Act (the "ADA") and the corresponding Nevada statute, and for tortious discharge. (*Id.* ¶¶ 31-62.)

In response to the Complaint, LBBS filed the pending Motion to Dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 8.)  As grounds for dismissal, LBBS argues that all of Plaintiff's claims are covered by the Agreement to Arbitrate, which it asserts is valid and enforceable. (*Id.* 4:1-3.)

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (emphasis added).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### III. DISCUSSION

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4). If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276-77 (9th Cir. 2006).

Plaintiff makes no assertion that her claims are not encompassed by the Agreement to Arbitrate or that the Agreement to Arbitrate is not authentic. (Resp., ECF No. 11.) Instead, Plaintiff argues in her Response that LBBS's motion should be denied because (1) it was untimely filed, (2) LBBS waived their right to arbitrate, and (3) the Agreement to Arbitrate is invalid or void. (*Id.*) The Court finds, however, that each of these arguments lacks merit.

**A. Timing of the Motion**

Plaintiff's first argument for denial of the Motion to Dismiss is that it was filed after the date it was due under the procedural rules. (Resp. 2:1-6, ECF No. 11.) However, pursuant to Federal Rule of Civil Procedure 12, a defendant has twenty-one days after being served with the summons and complaint to file a responsive pleading. FED. R. CIV. P. 12(a)(1)(A). One way in which a defendant may respond to a complaint is by filing a motion to dismiss. FED. R. CIV. P. 12(b).

In this case, Plaintiff completed service on LBBS on October 15, 2013. (ECF No. 7.) Exactly twenty-one days later on November 5, 2013, LBBS filed its Motion to Dismiss. (ECF No. 8.) Therefore, LBBS's motion was timely filed within the Rules.

**B. LBBS's Waiver of Right to Arbitrate**

Plaintiff's second argument for denial of the Motion to Dismiss is that under the terms of the Agreement to Arbitrate, LBBS waived its right to demand arbitration. (Resp. 5:5-8:8, ECF No. 11.) The particular provision in the Agreement to Arbitrate upon which Plaintiff relies states: "If the employee or the Firm does not make a written request for arbitration within the limitations period applicable to a claim under applicable federal or state law, the party has waived its right to raise that claim, in any forum, arising out of that issue or dispute." (*Id.* 5:7-12); (Ex. 3 to Plaintiff's Decl. in Supp. p. 1, ECF No. 12.) Though Plaintiff provides no law for what the applicable deadline might be, she contends that LBBS's filing of the Motion to Dismiss was "some 100 days or so past the deadline" to file a demand for arbitration. (Resp. 5:18-26, ECF No. 11.)

Plaintiff, however, is misconstruing the notice provision of the Agreement to Arbitrate. The provision states that unless a party makes a written request for arbitration on a claim within the applicable limitations period, that party "has waived its right *to raise that claim*." (Ex. 3 to Plaintiff's Decl. in Supp. p. 1, ECF No. 12) (emphasis added). LBBS here is not attempting to raise a claim. Rather, LBBS is seeking to enforce the Agreement to Arbitrate by having Plaintiff pursue her claims through arbitration as required under the terms of the Agreement to Arbitrate. Therefore, LBBS has not waived its right to seek arbitration.

**C. Validity of the Agreement to Arbitrate**

Plaintiff's third argument for denial of the Motion to Dismiss is that the Agreement to Arbitrate is void or invalid. (Resp. 3:1-5:4, 6:9-8:2, 8:3-15:16, ECF No. 11.) Plaintiff presents three different theories for why the Agreement to Arbitrate is void. First, Plaintiff asserts that the Agreement to Arbitrate was not adequately signed by LBBS. (*Id.* 3:1-5:4.) Second, Plaintiff asserts that the Agreement to Arbitrate violates the Older Workers Benefit Protection Act ("OWBPA"), codified in the ADEA, by failing to satisfy the "knowing and voluntary"

waiver requirements for Plaintiff's claims arising under the ADEA. (*Id.* 6:9-8:2, 14:3-15:16.) And third, Plaintiff asserts that the Agreement to Arbitrate is unconscionable. (*Id.* 8:3-14:2.)

Plaintiff's first argument is that the Agreement to Arbitrate is void because it was not signed by an agent of LBBS until sometime after October 2010, when she received a copy of her personnel file from LBBS that included a copy of the Agreement to Arbitrate with only her signature, and before November 5, 2013, when Defendant filed its Motion to Dismiss with an attached copy of the Agreement to Arbitrate containing both signatures. (*Id.* 3:1-5:4); (Ex. 3 to Plaintiff's Decl. in Supp., ECF No. 12.) She further asserts that even if the August 8, 2007 date for the signature of LBBS's agent is accurate,[1] the Agreement to Arbitrate cannot be valid as the twenty-one day delay between her signature and the signature of LBBS's agent shows that there cannot have been an offer, acceptance, or meeting of the minds. (Resp. 4:10-23, ECF No. 11.)

Plaintiff's argument here is unpersuasive. An arbitration agreement bearing only an employee's signature is valid and enforceable even if it is unsigned by the employer. *See Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013) (arbitration agreement containing only the employee's signature is binding against both parties); *see also Cadaval v. Dean Witter Reynolds, Inc.*, 703 F. Supp. 922, 924 (S.D. Fla. 1989) (arbitration agreement signed by employees was valid; allegations that signatures might have been forged were insufficient to invalidate agreement); *Perez v. Lemarroy*, 592 F. Supp. 2d 924, 930 (S.D. Tex. 2008) (absence of employer's signature on employment agreements did not make arbitration provisions invalid). In fact, under the FAA, an arbitration agreement need only be in writing, and no signature by either party is necessary to create a binding arbitration agreement. 9 U.S.C. § 2; *see Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1439 (9th Cir. 1994)

---

[1] Plaintiff notes the "lightness" of her signature in the copy of the Agreement to Arbitrate that also contains the signature of LBBS's agent, seeming to imply that this lightness somehow calls into question the accuracy of the date of the LBBS agent's signature. (Resp. 4:14-16, ECF No. 11); (Exs. 3 and 7 to Plaintiff's Decl. in Supp.)

("While the FAA requires a writing, it does not require that the writing be signed by the parties.") (internal quotations omitted). Therefore, because the Agreement to Arbitrate is binding regardless of whether LBBS signed it, a signing that occurs twenty-one days or even three years after Plaintiff's own signing would not void the agreement.

Furthermore, Plaintiff does not dispute that LBBS presented her a copy of the Agreement to Arbitrate at the start of her employment, which she signed. (*Id.* 3:16-17.) Plaintiff then proceeded to work in LBBS's employ for three years. This transaction constitutes an offer, acceptance, and meeting of the minds sufficient to form a contract in Nevada. *See Kindred v. Second Judicial Dist. Court ex rel. Cnty. of Washoe*, 996 P.2d 903, 906-08 (Nev. 2000) (finding two arbitration agreements signed as part of plaintiff's beginning employment to be a binding contract in Nevada).

Plaintiff's second argument is that the Agreement to Arbitrate is void because it fails to satisfy OWBPA's requirements for a waiver of claims arising under the ADEA to be "knowing and voluntary." *See* 29 U.S.C. § 626(f)(1)(A-G). Plaintiff asserts that the Agreement to Arbitrate is void because (1) it is not written in language calculated to be understood by the participant, especially as to the waiver of rights or claims arising after the date the waiver was executed (§ 626(f)(1)(A-C)); (2) it forced her to waive her rights or claims without valid consideration (§ 626(f)(1)(D)); and (3) it did not allow her at least seven days following its execution to rescind it (§ 626(f)(1)(G)). (Resp. 6:21-7:10, ECF No. 11.) This argument, however, is also unpersuasive.

As noted by LBBS, OWBPA's "knowing and voluntary" requirements only apply to substantive rights, not to procedural rights such as the right to a jury trial that is waived in an arbitration agreement. *See Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith,* 170 F.3d 1, 13 (1st Cir. 1999) ("Congress did not intend to preclude pre-dispute arbitration agreements when it enacted the OWBPA . . . . To interpret the OWBPA's reference to 'right' to include procedural

rights—and the right to a judicial forum in particular—would be to ignore the Supreme Court's repeated statements that arbitral and judicial fora are both able to give effect to the policies that underlie legislation."); *Seus v. John Nuveen & Co.*, 146 F.3d 175, 181-82 (3d Cir. 1998) ("the protection [OWBPA] affords is limited to the waiver of substantive rights under the ADEA"); *Williams v Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 660-61 (5th Cir. 1995) ("OWBPA protects against the waiver of a right or claim, not against the waiver of a judicial forum."). Given § 626(f)(1)(C)'s requirement that a knowing and voluntary waiver cannot include the waiver of "rights or claims that may arise after the date the waiver is executed," to hold that the knowing and voluntary requirements apply to the procedural right to a jury trial would be to find that OWBPA precludes the use of arbitration agreements for claims arising under ADEA, which would contradict Supreme Court and Ninth Circuit case law. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29 (1991) ("Congress . . . did not explicitly preclude arbitration or other nonjudicial resolution of claims, even in its recent amendments to the ADEA[, the OWBPA]."); *E.E.O.C. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 750 (9th Cir. 2003) ("right to jury trial presents no bar to compulsory arbitration [of Title VII claims]"); *see also Browning v. 24 Hour Fitness, Inc.*, C05-5732RBL, 2006 WL 151933, at *3 (W.D. Wash. Jan. 19, 2006) ("[T]he ADEA as amended does not prohibit the arbitration of age discrimination cases under it. The anti-waiver provisions apply to substantive rights, or claims, and not to the choice of forum."). Plaintiff did not waive any of her substantive rights in the Agreement to Arbitrate. Therefore, any non-compliance with OWBPA's "knowing and voluntary" requirements does not invalidate Plaintiff's waiver of her procedural right to a jury trial in the Agreement to Arbitrate.

Plaintiff's third argument is that the Agreement to Arbitrate is void because it is unconscionable. (Response 9:1-14:2, ECF No. 11.) Like her first two arguments, however, this argument is also unpersuasive.

For a contract to be unconscionable, Nevada law requires a showing of "both procedural and substantive unconscionability, but less evidence of substantive unconscionability is required in cases involving great procedural unconscionability." *Rent-a-Center West, Inc. v. Jackson*, 561 U.S. 63, 81 n.7 (2010) (internal quotation marks omitted).  A contract is substantively unconscionable if its terms are unfairly one-sided. *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003).  A contract is procedurally unconscionable if it is a contract of adhesion, meaning a standardized contract offered to one party on a "take it or leave it" basis by a party with greater bargaining power. *Id.* at 1148.  However, this Court has stated that "even a standardized employment contract cannot be a contract of adhesion as a matter of Nevada law. Therefore, even a mandatory arbitration agreement presented as a condition of employment is not unconscionable as a matter of Nevada law." *Pruter v. Anthem Country Club, Inc.*, No. 2:13–cv–01028–GMN–PAL, 2013 WL 5954817, at *3 (D. Nev. Nov. 5, 2013); *see also Kindred*, 996 P.2d at 907 ("We have never applied the adhesion contract doctrine to employment cases.").

Because Plaintiff was presented the Agreement to Arbitrate as part of her employment, it cannot be procedurally unconscionable in Nevada. *Id.*  Furthermore, the Court notes that the Agreement to Arbitrate does not contain any of the normal provisions that make arbitration agreements substantively unconscionable.  The Agreement to Arbitrate mutually compels both Plaintiff and LBBS to arbitrate their claims against one another, allows each side equal rights in selecting arbitrators, requires LBBS to cover the entire cost of arbitration, and does not place a limit on Plaintiff's potential award. (Ex. 3 to Plaintiff's Decl. in Supp., ECF No. 12); *see D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1165 (Nev. 2004) (finding an arbitration clause substantively unconscionable because it only penalized one side for forgoing arbitration and it required the parties to split that cost of arbitration); *Burch v. Second Judicial Dist. Court of State ex rel. Cnty. of Washoe*, 49 P.3d 647, 650-51 (Nev. 2002) (finding an arbitration clause

substantively unconscionable because it granted one side unilateral power to select the arbitration rules and arbitrators).  Therefore, the Court finds that the Agreement to Arbitrate is not unconscionable.

Having now rejected each of Plaintiff's arguments that the Agreement to Arbitrate is void, this Court finds that the Agreement to Arbitrate is valid and enforceable between the parties.

Accordingly,

### IV.     CONCLUSION

**IT IS HEREBY ORDERED** that LBBS's Motion to Dismiss (ECF No. 8) is **GRANTED.**

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __18_ day of July, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge